UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON THOR LEONARD,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA STATE PRISON SACRAMENTO, et al.,<br><br>Defendants. | No. 2:22-cv-01231 WBS SCR P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, who was formerly incarcerated in state prison, is proceeding pro se and in forma pauperis with this civil rights action under 42 U.S.C. § 1983. Defendants Britton and Bartlett, the only remaining defendants, have filed a motion for summary judgment. (ECF No. 53.) For the reasons set forth below, the undersigned recommends the motion be granted.

**PROCEDURAL BACKGROUND**

The action is proceeding on plaintiff's operative first amended complaint ("FAC") filed on April 28, 2023. (ECF No. 10.) Plaintiff alleged that on June 30, 2020, defendants A. Britton and S. Barlett, both Correctional Officers ("C/Os") at California State Prison, Sacramento ("CSP-Sac"), violated his Eighth Amendment rights by allowing him to be stabbed by another inmate. Plaintiff claimed he notified the defendants of threats against him by the inmate who stabbed him and made repeated requests for protection. (Id. at 3.) On screening, the previously assigned

1

magistrate judge determined the FAC stated cognizable Eighth Amendment failure-to-protect claims against defendants Britton and Bartlett and directed service. (ECF Nos. 12, 15.)

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.  Parties' Filings

#### A.  Defendants' Motion

Defendants Bartlett and Britton move for summary judgment on plaintiff's Eighth Amendment claim. (ECF No. 53.) Defendants explain they were escorting plaintiff to a holding cell when another inmate threatened to throw bodily fluids on them, commonly referred to as "gassing," as they approached. To avoid that threat, defendants directed plaintiff in the opposite direction, past inmate Gulbronson's cell instead. However, unbeknownst to defendants, there was a small hole in Gulbronson's cell window, and he had possession of a homemade spear. As they passed Gulbronson's cell, he threw the spear out the small hole, striking plaintiff's arm. (ECF No. 53-1 at 1-2.)

Defendants assert the evidence shows Gulbronson did not present an objectively serious risk to plaintiff, that defendants had no subjective knowledge about the risk involved in walking past Gulbronson's cell, and that defendants acted reasonably in response to the threat of gassing. (ECF No. 53-1 at 2-3.) Given these undisputed facts, defendants maintain summary judgment should be granted in their favor. In the alternative, defendants claim they are entitled to qualified immunity.

#### B.  Plaintiff's Opposition and Defendants' Reply

Plaintiff filed an opposition in which he argues that defendants Bartlett and Britton were aware of prior documented threats against him by inmate Gulbronson and had knowledge that Gulbronson's window was broken the morning of the spear attack. (ECF no. 56 at 1, 4-5.) He maintains that Gulbronson had a "dangerous reputation" and points to a prior stabbing at CSP-Sac in June 2020 that he asserts "should have triggered enhanced safety protocols." (Id. at 10.)

Plaintiff reproduced defendants' statement of undisputed facts and disputed seven of defendants' facts with handwritten denials. (Id. at 13-17.) However, plaintiff's denials do not cite to particular parts of the record as required by Federal Rule of Civil Procedure 56(c)(1) and

Local Rule 260(b). Nor did plaintiff submit any evidence in support of his denials, and his opposition itself is unverified. In their reply, defendants address each of plaintiff's seven denials but maintain those denials are supported with "unattested statements of conjecture and speculation" that fail to create triable issues of fact for a jury to consider. (ECF No. 57 at 1-5.)

Plaintiff's denials are not supported by admissible evidence. However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010); see also Adv. Comm. Note to 2010 Amendments to Fed. R. Civ. P. 56(e) ("[S]ummary judgment cannot be granted by default . . . when an attempted response fails to comply with Rule 56(c) requirements."). Therefore, the undersigned will consider the entire record despite plaintiff's failure to fully comply with applicable rules. See Adv. Comm. Note to 2010 Amendments to Fed. R. Civ. P. 56(e)(4) ("[T]he court may seek to reassure itself by some examination of the record before granting summary judgment against a pro se litigant."). The court will also consider whether plaintiff's verified filings and deposition can serve as opposing affidavits:

> [B]ecause [the plaintiff] is pro se, we must consider as evidence in his opposition to summary judgment all of [his] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct.

Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); see also Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003) (reversing grant of summary judgment to defendants where district court failed to credit genuine issues of material fact raised in plaintiff's deposition testimony).

**C. Order for More Complete Video, Fed. R. Civ. P. 56(e)(4)**

Defendants lodged two short videos of the spearing incident with their summary-judgement motion. (ECF No. 52.) Neither shows the events leading up to it—such as defendants' arrival on plaintiff's tier, plaintiff "cuffing up," or the trio's turn after encountering the gassing threat—that may be relevant to defendants' subjective knowledge of the risk to plaintiff. After reviewing the parties' summary-judgment filings, including the two videos, the

////

undersigned ordered defendants to produce a more complete video pursuant to Rule 56(e)(4).[1] (ECF No. 58.)

In response, defendants assert no additional video footage of the spearing incident or the events leading up to it exist. (Second Declaration of L. Crenshaw, ECF No. 59.) The California Department of Corrections and Rehabilitation ("CDCR") provided defendants with fourteen total videos pertaining to the spearing incident. (Id. ¶ 2.) Two of the videos, which were lodged with the court, depicted the spearing incident itself. Twelve others showed events in the medical bay and yard after the incident. These were preserved because C/O N. Rodriguez authored an RVR stating plaintiff willfully resisted a peace officer in the medical bay and during the escort back to his housing unit. (Id.) Defendants followed up with CDCR after conferring with plaintiff during discovery, but CDCR confirmed no additional footage existed. (Id. ¶ 7.)

## II.    Material Facts[2]

### A. Background

CSP-Sac has a Psychiatric Services Unit (PSU) that is designed to provide a high level of mental health care to maximum security inmates. (Defendants Statement of Undisputed Material Facts ("SUMFs") 1, ECF No. 53-2.) This restrictive housing unit requires inmates to be escorted by two staff members. The incarcerated person is always placed in restraints. (SUMF 2.) A common danger during escorts is gassing — the act of throwing bodily fluids, usually urine and feces, on another person. This is accomplished by angling the fluid in a manner that forces it to splash up and out through the cracks present in both the bottom and side of the PSU cell doors. (SUMF 3.)

In June of 2020, Plaintiff Jason Leonard lived in the PSU on Facility B, Housing Unit 7, in cell 209. He had been living in the PSU for the prior seven months. (SUMF 4.) Plaintiff was concerned about Inmate Plett in cell 212 because he had previously threatened to gas Plaintiff. (SUMF 5.) Inmate Gulbronson also lived in the housing unit in cell 205. Gulbronson had an

---

[1] When a party fails to properly address another party's assertion of fact, Rule 56(e)(4) permits courts to issue further orders to "encourage proper presentation of the record." Adv. Comm. Note to 2010 Amendments to Fed. R. Civ. P. 56(e)(4).

[2] The material facts are undisputed unless specifically noted otherwise.

extensive history of gassing staff.  He also had a history of spearing — the act of throwing a homemade spear through a hole in the window.  During the ten years before the incident, Gulbronson speared staff members three times, all in 2018, approximately two years before the incident.  (SUMF 6.)

### B. Disputed Rule Violation Report (June 9, 2020)

Plaintiff believed Gulbronson to be dangerous, but the parties dispute whether he ever reported him as a threat.  Three-weeks prior to the incident, plaintiff allegedly refused to walk past Gulbronson's cell and received a Rules Violation Report ("RVR") for "willfully resisting a Peace Officer in the performance of a duty."  (SUMF 6.)  Defendants dispute this was the basis for RVR, as the report does not mention Gulbronson or the reason for plaintiff's refusal.  (Id.)  Per the RVR, the officers escorting plaintiff at the time were defendant Bartlett and nondefendant W. Sampley.  (Declaration of S. Bartlett ("Bartlett Decl."), Exh. A, ECF No. 53-4 at 7.)

At his deposition, plaintiff elaborated on his version of the use of force incident underlying the RVR:

> Q: Have you ever reported a threat to . . . the institution?
>
> A: The only time was about two or three weeks before the incident in question. They tried to walk me back from the yard past this guy's cell. And this guy moved cells like no other, he kept moving cells 'cause he would constantly break the window and do these things. He has a history of –
>
> Q: When you say "this guy," . . . what's the inmate's name?
>
> A: [Gulbronson.][3]  So they tried to walk me by his cell, and I was already – Didn't want to do it 'cause he's known for doing what he did to me. And it was so bad, the COs had to use a use of force because I refused to walk. And you can . . . find that.  It happened about three weeks before this incident, where they slammed me on the ground because I refused to walk by his cell, and I got written up and everything. It's in the record . . . . I refused to walk.  They said, "No, let's go."  I said, "I'm not walking by his cell." [. . . . ] So I refused to walk, and at that point they had five or six COs throwing me on the ground because I was gonna refuse to walk by this guy's cell.

---

[3] Both plaintiff and the deposing attorney referred to Gulbronson as "O'Bronson" throughout the deposition.  This appears to be a stenographical error.

5

(Deposition of Jason Thor Leonard ("Pltf. Dep.") 16:6-17:8, ECF No. 53-3 at 8-9.)  When asked why he wouldn't pass Gulbronson's cell, plaintiff responded, "[H]e's known for stabbing – I am not the first person.  This guy has stabbed COs.  He's broken the windows where we can look into and he's shot geese with arrows and dragged geese into his cell.  He's like a MacGyver."  (Id. at 17:13-18, ECF No. 53-3 at 9.)

### C. Spearing Incident (June 30, 2020)

Defendants Bartlett and Britton worked in various areas of the PSU since 2013 and 2015, respectively.  Neither of them was involved in Gulbronson's prior spearing incidents, although they were familiar with him generally as a long-term resident of the PSU.  In all their years in the PSU and as CDCR employees, neither had ever observed a spearing incident and believe it to be uncommon.  (SUMF 7.)

On June 30, 2020, at approximately 6:00 a.m., defendants arrived for work at the PSU. On that day, defendant Bartlett was working as an Escort Officer and defendant Britton was working as a Security Patrol Officer on Facility B, Housing Unit 7.  Their responsibilities were substantially similar and included inspecting all areas of responsibility upon arrival, assisting with count, assisting mental health professionals when interacting with inmates, performing security welfare checks twice an hour when requested, performing three random cell searches each shift, and escorting inmates from their housing unit to mental health appointments.  Both defendants were constantly in and out of the housing unit during the entirety of their shift.  (SUMF 8.)

Defendants' shift proceeded normally and neither Bartlett nor Britton recall anything unusual leading up to the incident.  (SUMF 9.)  Nondefendant Officer Z. Lujan was also working in Housing Unit 7 that day and performing security and welfare checks.  These involve walking past each cell and observing the inmate every 30 minutes.  At approximately 9:10 a.m., as part of his checks, Officer Lujan noticed the side window of cell 205, occupied by inmate Gulbronson, was partially shattered with a web like pattern and a small hole in the center.  (SUMF 10.) Officer Lujan documented the hole and told Gulbronson to pack his things so that he could be moved to a different cell.  (SUMF 12.)  Plaintiff testified at his deposition that he heard the window crack and Officer Lujan's conversation with Mr. Gulbronson.  (SUMFs 11, 12.)  Per

6

custom and practice, Lujan then conferred with the sergeant, who would decide where Gulbronson would be temporarily housed considering the current occupancy numbers, severity of damage, and timing of repairs.  Lujan did not notify defendants Bartlett or Britton about the hole in Gulbronson's window.  (SUMF 13.)

About two hours later,[4] a repair person arrived in Housing Unit 7 to fix the broken television cable in cell 209, occupied by plaintiff.  Per prison policy, plaintiff needed to wait in a holding cell while repairs to his cell were being made.  Defendants arrived at cell 209 to escort plaintiff to the holding cell.  (SUMF 14.)  Plaintiff "cuffed-up" as required without issue.  The trio proceeded towards cell 212 to access the nearest staircase.  During the escort, Britton stood next to Plaintiff's side with a hand on him, and Bartlett walked a short distance behind as required by prison policy.  (SUMF 15.)  As they approached cell 212, inmate Plett threatened to gas them.  To avoid the gassing, defendants directed plaintiff in the other direction, towards cell 205, to access another staircase.  Plaintiff did not object.  (SUMF 16.)  When the trio passed Gulbronson's cell, he threw a handmade spear through the small hole in his side window.  The spear struck Plaintiff in the right arm.  Plaintiff believes that Gulbronson did not specifically target him, and that it was a crime of opportunity.  At no time before the incident did Bartlett or Britton know the window was broken or that Gulbronson had a spear.  (SUMF 17.)

## LEGAL STANDARDS

### I.   Summary Judgment

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record,

---

[4] Per the RVR, Officer Lujan discovered the partially shattered window at 0910 hours.  (Barlett Decl., Exh. B, ECF No. 53-4 at 9.)  The video footage shows the spearing occurred later that morning at 1106 hours.  (See Declaration of Lyndsay Crenshaw ("Crenshaw Decl."), Exh. C.)

7

including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

8

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Adv. Comm. Note to 1963 Amendments to Fed. R. Civ. P. 56(e)).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## II. Eighth Amendment Failure to Protect

The Eighth Amendment imposes on prison officials a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citations omitted). However, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. Rather, a prison official may be held liable for an assault suffered by one inmate at the hands of another only where the assaulted inmate can show he was "incarcerated under conditions posing a substantial risk of serious harm," and that the prison official was deliberately indifferent to that risk. Id. at 834, 837.

A prison official acts with deliberate indifference only if he "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; see also Labatad v. Corr. Corp. of Am., 714 F.3d 1155,

1160 (9th Cir. 2013) ("Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" (quoting Farmer, 511 U.S. at 847)). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842 (citations omitted).

## DISCUSSION

### I.   Objectively, Sufficiently Serious Risk

Defendants argue that Mr. Gulbronson did not present an objectively sufficient serious risk of harm to plaintiff. (ECF No. 53-1 at 8-10.) Although Gulbronson had a history of gassing staff and speared three staff members through a broken window in 2018, defendants maintain that this amounted to a "generalized risk" that is insufficient to trigger the Eighth Amendment. "There is no evidence that Gulbronson was more dangerous than any other inmate assigned to the maximum-security housing unit, or that he posed a risk above and beyond the inherent risk of a maximum-security housing united, especially during escorts." (Id. at 8-10.)

Defendants' authorities support their argument that the mere possibility of a risk of harm is not legally sufficient. See Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) ("The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference" (internal quotation marks omitted)); Williams v. Wood, 223 F. App'x 670, 671 (9th Cir. 2007) ("[S]peculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm[.]"); Becker v. Cowan, No. 3:07-cv-1571 RBB, 2008 WL 802933, at *11 (S.D. Cal. Mar. 21, 2008) ("To meet the objective element of an Eighth Amendment claim . . . Plaintiff must allege that he is *actually* at a substantial risk of harm, not simply that he believes he is at risk.") (emphasis in original). Thus, the undersigned agrees that generalized concerns regarding Gulbronson's history of gassing and spear attacks are likely insufficient to satisfy the objective prong of the Eighth Amendment analysis.

However, it is undisputed that Officer Lujan discovered the hole in Gulbronson's cell window roughly two hours before the spearing incident and told Gulbronson to pack his things so he could be moved to a different cell.  Drawing all reasonable inferences in plaintiff's favor, the partially shattered window presented a specific, substantial risk of serious harm given Gulbronson's history of spearing incidents through broken windows.  The prison's practice of temporarily rehousing an inmate who breaks a cell window (see Bartlett Decl. ¶ 7, ECF No. 53-4 at 3) further supports the reasonable inference that the broken cell window presented a real, nonspeculative danger.

To refute that the hole presented a risk, defendants note plaintiff did not object to walking past Gulbronson's cell even though he knew the window was broken and about Gulbronson's spearing history.  (ECF No. 53-1 at 7.)  This argument is not convincing because the first prong concerns *objective* risks.  See Farmer, 511 U.S. at 834; Lemire v. California Dep't of Corr. & Rehab., 726 F.3d 1062, 1077 (9th Cir. 2013) (finding district court erred in discussing only whether defendants' actions posed a serious risk to plaintiff specifically).  For the same reason, the alleged lack of incidents and altercations between plaintiff and Gulbronson during the seven months they housed together (see ECF No. 53-1 at 7) is not relevant to the objective inquiry.  "[I]t does not matter . . . whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk."  Farmer, 511 U.S. at 843.

For these reasons, the undersigned finds that there is a genuine dispute as to whether the broken cell window presented an objectively, sufficiently serious risk.  Accordingly, defendants have not met their initial summary judgment burden on the first prong of the failure-to-protect analysis.  See Lemire, 726 F.3d at 1075-76 ("The objective question of . . . a substantial risk of serious harm is a question of fact, and as such must be decided by a jury if there is any room for doubt.").

## II.     Deliberate Indifference

### A. Subjective Awareness of the Risk

Turning to the second prong of the failure-to-protect analysis, defendants argue that they had no knowledge of the broken cell window or Gulbronson's possession of a spear before the

11

1  incident. (ECF No. 53-1 at 9.) Both state in sworn declarations that Officer Lujan, who
2  discovered the hazard two hours before the spearing incident and issued an RVR to Gulbronson,
3  "never informed [them] of the broken window and [they] did not observe the broken window
4  before the incident." (Bartlett Decl. ¶ 7, ECF No. 53-4 at 3; Declaration of A. Britton ("Britton
5  Decl.") ¶ 8, ECF No. 53-5 at 8.) They further claim they were not aware of any prior incidents
6  between Gulbronson and plaintiff, and that plaintiff did not object to walking past Gulbronson's
7  cell despite his knowledge of the broken window. (Bartlett Decl. ¶¶ 4-5, 9; Britton Decl. ¶¶ 6,
8  10.) Because these assertions are sufficient to show defendants had no "subjective awareness of
9  the risk of harm," see Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1068 (9th Cir. 2016) (en
10 banc), defendants have met their initial burden.

11      The burden then shifts to plaintiff, who "must demonstrate that the risk was obvious or
12 provide other circumstantial or direct evidence that the prison officials were aware of the
13 substantial risk" to his safety. Lemire, 726 F.3d at 1078 (citing Thomas, 611 F.3d at 1150).
14 Evidence that the substantial risk was "longstanding, pervasive, well-documented, or expressly
15 noted by prison officials in the past, and the circumstances suggest that the defendant-official
16 being sued had been exposed to information concerning the risk and thus 'must have known'
17 about it, . . . could be sufficient to permit a trier of fact to find that the defendant-official had
18 actual knowledge of the risk." Farmer, 511 U.S. at 842; see also Harrington v. Scribner, 785 F.3d
19 1299, 1304 (9th Cir. 2015) ("[O]bviousness of a risk may be used to prove subjective
20 knowledge[.]" (citations omitted)). "[O]bviousness is not measured by what is obvious to a
21 layman, but rather by what would be obvious 'in light of reason and the basic general knowledge
22 that a prison official may be presumed to have obtained regarding the type of deprivation
23 involved.'" Lemire, 726 F.3d at 1078 (quoting Thomas, 611 F.3d at 1151)).
24      In his opposition, plaintiff challenges defendants' claim that they were not aware of the
25 broken window. He states that everyone in the unit, including C/Os and inmates, knew the
26 window was broken. (ECF No. 56 at 17.) He adds that prison policy required "all staff to be
27 notified of such hazards," (id. at 3, 5), and that a known dangerous inmate with a broken window
28 was a foreseeable harm (id. at 9). Plaintiff also claims that an inmate was stabbed in the same

1  unit earlier that month that created a heightened obligation to protect inmates, "particularly where
2  specific threats were known." (Id. at 4, 10.)

3  Because plaintiff's opposition is unverified, its "unsworn factual allegations" regarding
4  defendants' knowledge of the broken cell window "do not constitute evidence" that can be used
5  to counter defendants' summary-judgment motion. Coverdell v. Dep't of Soc. & Health Servs.,
6  State of Wash., 834 F.2d 758, 762 (9th Cir. 1987); see also Motoyama v. Hawaii, Dep't of
7  Transp., 864 F. Supp. 2d 965, 977 (D. Haw. 2012) ("[A] self-serving statement in [plaintiff's]
8  opposition cannot create a genuine issue of material fact for trial or constitute evidence" (citations
9  omitted)), aff'd, 584 F. App'x 399 (9th Cir. 2014). But even if plaintiff had made the statements
10 in a sworn declaration, they would lack adequate support to create triable issues. For instance,
11 what prison policy requires staff notification of broken cell windows? How is plaintiff aware of
12 that policy? Moreover, what is the basis for plaintiff's related assertion that defendants are lying
13 when they claim to have no knowledge of the broken window? "Conclusory, speculative
14 testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat
15 summary judgment." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007)
16 (citations omitted); see also F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) ("A non-
17 movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to
18 withstand summary judgment." (citation omitted)).

19 The undersigned will next determine whether there are record materials that show grounds
20 for genuine dispute. At his deposition, plaintiff said that he refused to walk past Gulbronson's
21 cell during an escort three weeks before the spearing incident. During that escort, plaintiff fell to
22 the floor and told the officers, "I'm not walking by his cell." (Pltf. Dep. 17:3, ECF No. 53-3 at 9.)
23 Plaintiff received an RVR for the incident, which shows the escorting C/Os were defendant
24 Bartlett and nondefendant Sampley. Therefore, there is some dispute – at least as to defendant
25 Bartlett – whether plaintiff previously raised concerns about passing Gulbronson's cell.

26 But even if the earlier escort-to-RVR incident allows for the inference that defendant
27 Bartlett was aware that plaintiff feared passing Gulbronson's cell, it does not allow the
28 undersigned to infer Bartlett knew about Gulbronson's broken cell window or drew the inference

13

of its substantial risk to plaintiff – particularly where plaintiff did know but failed to speak up.[5] While the failure to give advance notice of a specific threat is not dispositive, deliberate indifference will not be found where there is no other evidence in the record showing that the defendants knew of facts supporting an inference and drew the inference of substantial risk to the prisoner.  Labatad, 714 F.3d at 1161; see also Wright v. Contreras, No. 09-cv-2566 JLS MDD, 2012 WL 834859, at *6-7 (S.D. Cal. Mar. 12, 2012) ("[M]erely expressing subjective fear of a cellmate and pointing out his unsettling behavior, vague threats, and unclassified status does not give rise to a constitutional claim for deliberate indifference against a prison official.").

The undersigned will next consider whether the record supports the obviousness of the substantial risk.  While the broken cell window was not longstanding, there are some signs it was obvious.  It is undisputed that Officer Lujan discovered the hazard at 9:10 a.m. and expressly noted it in a written RVR.  Plaintiff testified at his deposition that he heard the window break (Pltfs. Dep. 22:6-8, ECF No. 53-3 at 14) and could observe the hole from the guard tower's reflection (id. at 24:18-24, ECF No. 53-3 at 16).  Plaintiff also overheard other C/Os ordering Gulbronson to collect his belongings and get ready to move to another cell that has an intact window.  (Id. at 24:11-16.)

When viewed in the context of defendants' specific positions and duties, this evidence supports the inference that defendants should have known about the broken window.  Defendants were assigned to plaintiff's housing unit and on shift during the commotion described by plaintiff in his deposition, having each arrived at 6:00 a.m.  Defendants state they were "constantly walking in and out of the housing unit," and had job duties that included "performing security welfare checks twice an hour when requested" and "performing three random cell searches each shift." (Bartlett Decl. ¶ 6; Britton Decl. ¶ 7.)  It seems likely defendants would have been aware of Lujan's RVR or come across the broken cell window during the normal course of their duties.
////

---

[5] In fairness, the undersigned recognizes that plaintiff may have feared that objecting would result in another RVR.  While this provides a plausible explanation for plaintiff's failure to object, it does not support an inference of Bartlett's subjective awareness of the risk.

14

However, a defendant's liability must be based on actual awareness of the risk rather than constructive knowledge. Harrington, 785 F.3d at 1304. "If a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk." Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir.2002); see also Farmer, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.") The undersigned finds that while the circumstantial evidence shows defendants' negligence in not identifying the hazard, it does not combine to support an inference of actual knowledge. See Frary v. Cnty. of Marin, 81 F. Supp. 3d 811, 828 (N.D. Cal. 2015) (granting summary judgment to official where the evidence showed he should have been aware of plaintiff's medical need from visual safety checks or review of the medical record, "but not that he was in fact was aware of such a need"); Dean v. City of Fresno, 546 F.Supp.2d 798, 813-14 (E.D. Cal. 2008) (officers did not violate decedent's right to medical care where evidence suggested they should have suspected he swallowed cocaine but the evidence was not strong enough to show their actual knowledge).[6]

In sum, plaintiff's testimony regarding the RVR incident and the circumstantial evidence of the broken cell window's obviousness are insufficient to establish an inference of defendants' actual knowledge of the substantial risk to plaintiff. Moreover, as discussed above, defendants have confirmed that there is no additional video of the events leading up to the spearing incident that may shed light on their subjective knowledge of the risks. Accordingly, because there is no genuine dispute as to whether defendants were subjectively aware of the broken window and drew the inference of its substantial risk to plaintiff, the undersigned recommends that their summary-judgment motion be granted.

////

---

[6] Defendants also persuasively cite to cases where summary judgment was granted to prison officials who should have, but failed to, recognize they were celling the plaintiff with a documented enemy. See Banks v. Deschutes Cnty., No. CIV. 06-6299-TC, 2009 WL 2366546, at *2–3 (D. Or. July 31, 2009), aff'd, 408 F. App'x 94 (9th Cir. 2011); Ruiz v. Walker, No. C 06-5559 SI (PR), 2008 WL 512710, at *7 (N.D. Cal. Feb. 25, 2008), aff'd sub nom. Ruiz v. Sotelo, 338 F. App'x 665 (9th Cir. 2009).

### III. Qualified Immunity

A district court need not discuss qualified immunity where there is no genuine dispute as to whether defendants violated plaintiff's constitutional rights. See Cnty. of Sacramento v. Lewis, 523 U.S. 833, 842 n.5 (1998). However, the undersigned will briefly address qualified immunity to explain that, even if defendant's subjective awareness was a triable issue, the right allegedly implicated was likely not clearly established.

In resolving qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the officials violated a constitutional right. The second asks whether that right was "clearly established" at the time of the alleged constitutional violation. Peck v. Montoya, 51 F.4th 877, 887 (9th Cir. 2022) (citing Tolan v. Cotton, 572 U.S. 650, 655-56 (9th Cir. 2014) (per curiam)). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable defendant that his conduct was unlawful in the situation he confronted. Saucier v. Katz, 533 U.S. 194, 202 (2001).

Assuming *arguendo* that a genuine issue exists to whether defendants violated plaintiff's Eighth Amendment right, defendants argue that "[t]he law was not so clearly established, in the specific context of this case, that every reasonable officer would know that trying to prevent Plaintiff from being gassed by proceeding in the only other available direction, past an inmate with a broken cell window, was a constitutional violation." (ECF No. 53-1 at 12.) They point to Farmer, 511 U.S. at 844-45, which they maintain "establishes that reasonable actions taken to protect inmates do not amount to constitutional violations even when they result in injury." (Id.)

The Ninth Circuit clarified the qualified immunity analysis for failure-to-protect claims in Estate of Ford v. Ramirez-Palmer, explaining that "a reasonable prison official understanding that he cannot recklessly disregard a substantial risk of serious harm, could know all of the facts yet mistakenly, but reasonably, perceive that the exposure in any given situation was not that high. In these circumstances, he would be entitled to qualified immunity." 301 F.3d 1043, 1050 (9th Cir. 2002) (citing Saucier, 533 U.S. at 205). The Court went on to explain that

> it is not sufficient that Farmer clearly states the general rule that prison officials cannot deliberately disregard a substantial risk of serious harm to an inmate; . . . in addition, it is relevant that neither Farmer nor subsequent authorities has fleshed out at what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes. Thus, it would not be clear to a reasonable prison official when the risk of harm . . . changes from being *a* risk of *some* harm to a *substantial* risk of *serious* harm. Farmer left that an open issue. This necessarily informs "the dispositive question" of whether it would be clear to reasonable correctional officers that their conduct was unlawful in the circumstances [they] confronted.

Id. at 1050-51.

Applying the Estate of Ford framework, the undersigned is persuaded by defendants' argument regarding the reasonableness of their response to the gassing threat. Even assuming Gulbronson's broken cell window was known, a reasonable C/O could mistakenly, but reasonably, perceive the path past Gulbronson's cell to present a lesser risk of harm than continuing past Pleet's cell. The undersigned simply cannot say that a reasonable C/O would have recognized that this decision was unlawful given it was clearly established law that prison officials must "take reasonable measures to mitigate the known substantial risks to a prisoner." Wilk v. Neven, 956 F.3d 1143, 1150 (9th Cir. 2020) (quoting Castro, 833 F.3d at 1067 and cleaned up); see also Reece v. Groose, 60 F.3d 487, 490 (8th Cir. 1995) (In a failure-to-protect case, "defendants . . . would have qualified immunity if, in the light of all facts known at the time, they reasonably believed that they had taken proper measures to protect the plaintiff.").

For these reasons, had plaintiff met his burden on the substantive Eighth Amendment claim, the undersigned would still recommend that defendants be granted qualified immunity.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 53) be GRANTED and the Clerk of the Court be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

17

1  objections shall be served and filed within fourteen days after service of the objections.  The
2  parties are advised that failure to file objections within the specified time may waive the right to
3  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
4  DATED: November 18, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE